FILED

1    Bonnie Lee Olson, MD        (Full Name)

2    dr.o@earthlink.net        (Email Address)

3    11901 Sunset Blvd #27        (Address Line 1)

4    Los Angeles, CA 90049        (Address Line 2)

5    310-383-5519        (Phone Number)

6    Plaintiff in Pro Per

7

8

2026 FEB 24  AM 11: 34

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

9                    **UNITED STATES DISTRICT COURT**

10                    **CENTRAL DISTRICT OF CALIFORNIA**

11

12    Bonnie Lee Olson, MD              Case No.: CV25- 8498-MWC (AGRx)
                                                    (To be supplied by the Clerk)
13              **PLAINTIFF,**            1ST **AMENDED COMPLAINT**
                                          (Insert Number)
14         **vs.**                         **FOR:**

15    Douglas A. Collins, Secretary, Agency    _____

16    Dept of Veteran Affairs                  _____

17    _____                   _____

18

19                                        **Jury Trial Demanded:** ☐ Yes  ■ No

20         **DEFENDANT(S).**

21

22              ┌─────────────────────────┐
                │   **I. JURISDICTION**   │
23              └─────────────────────────┘

24         1.  This Court has jurisdiction under the direction of the Equal Employment

25    Opportunity Commission upon denial of my petition of enforcement of an EEOC

26    AJ final order, reached by summary judgement issued January 4, 2021.

27    [ See exhibit A]

28    _____

*Form Prepared by Public Counsel*
*© 2024 Public Counsel. All Rights Reserved.*        *Page Number*

1

2

## II. VENUE

3    2. Venue is proper pursuant to __both the plaintiff and the defendant branch__

4    of Dept of Veteran Affairs are located in Los Angeles, CA.

5

6

7

8

9    ## III. PARTIES

10

11

12    3.    Plaintiff's name is _Bonnie Lee Olson, MD_____. Plaintiff resides

13    at: __11901 Sunset Blvd, #207, Los Angeles, CA 90049__

14

15

16

17

18    4. Defendant _Douglas A Collins, Secretary of Veteran Affairs, Agency_

19    __US Dept of Veteran Affairs__

20    __810 Vermont Ave, NW__

21    __Washington, DC  20420__

22

23

24    5. Defendant _____

25

26

27

28

# IV. **STATEMENT OF FACTS**

1    On January 4th, 2021 the AJ at the Equal Employment Opportunity Commission (EEOC) issued a decision by summary juddgement on a complaint, claim #2 (pay claim) Agency no. 200P-0691-2015104325 concluding that the Agency (Dept of Veteran Affairs) did not provide a specific, clear and individual-ized explanation as to why Plaintiff was paid less than other younger colleagues. Therefore, the AJ at EEOC entered judgement in favor of plaintiff. The defendant Agency was ordered to provide plaintiff with back pay from 8-21-13 to 1-4-21. [See Exhibit B]

2    The specific instructions for the calculation of back pay was detailed by the AJ as quoted below:

"[...]the Agency shall pay the Complainant back pay for the difference between the complainant pay and that of her highest paid comparatives retroactive to two years prior to filing the formal complaint". Comparatives including any substantially younger psychiatrist (five years younger or more) employed by the Agency.

3    On 1-26-22 Plaintiff filed an appeal with the OFO since no back pay had been provided or documents to support their efforts at calculation. In the VA response to the appeal VA described adding a number of other factors to find comparators such as full-time status, academic appointments and  others. The question of additional factors was noted in the original judgement and specifically rejected [ See Exhibit C for a summary of actions and time line related to the above]

1      Back pay is seen in a paystub 4/23/22. On 10-30-23 Defendant was *Insert ¶ #* directed to send a compliance report to OFO and to the plaintiff to include documents on comparators with evidence such as SF-50 pay information. Agency did not respond to either the OFO or to the Plaintiff. Therefore a second appeal was filed by Plaintiff on 1-10-25, EEOC no. 2025001081. The appeal noted that comparators had been withheld from consideration. [Exhibit C]. Four excluded comparators with SF-50s were available from discovery. [See Exhibit D]

2      Defendant Agency's final response to the request for a compliance *Insert ¶ #* report dated 2-7-25 [See Exhibit E] does not address comparators eliminated and once again demonstrates the addition of other factors explicitly rejected in the summary judgement.

*Insert ¶ #*

## V. **CAUSES OF ACTION**

## **FIRST CAUSE OF ACTION**

Age discrimination as it applies to pay

*insert title of cause of action*

**(As against Defendant(s):** Douglas A. Collins, Secretary

U.S. Dep. of Veteran Affairs

1. Evidence provided by the Agency shows a clear pattern of pay

*Insert ¶ #*

higher for younger psychiatrists than for older doctors over many years.

2. When EEOC sought clear and specific explanations for determining

*Insert ¶ #*

Plaintif's market pay, a significant element in overall pay, Defendant never

did this. Plaintiff is well known in the UCLA, USC and Cedars Sinai

medical communities, having been instrumental in bringing VA grants to

establish fellowship training in her sub-specialty in Los Angeles.

3. Documentary evidence of the pay for some younger psychiatrists

*Insert ¶ #*

was notably absent from consideration during formal investigations per EEOC.

This was this done at first by withholding SF-50 evidence, then reporting that

these documents were no longer accessable to GLA-VA.

## SECOND CAUSE OF ACTION

( Repeat violations of the EEOC process prejudicial to the Plaintiff )

*insert title of cause of action*

**(As against Defendant(s):** Douglas A. Collins, Secretary

U.S. Dept. of Veteran Affairs )

1. Inaction on an EEOC AJ summary judgement order for back pay for

*Insert ¶ #*

over a year.

2. Defendant ignored the demand for reports and adequate evidence.

*Insert ¶ #*

Defendant deliberately obfuscated the matter with factors clearly denied in

the summary judgement.

3. Deliberate manipulation of evidence to allow for reduced back pay,

*Insert ¶ #*

to exclude evidence of very highly paid younger psychiatrists.

# VI. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests:

1    Unpaid backpay consistent with the original order on 1-4-21 [See exhibit B]

*Insert ¶ #*

The absence of reliable evidence to calculate this back pay prevents a clear

calculation of the amount remaining unpaid. It would be in the neighborhood of

$200, 000 and $300,000 dollars.


2    Other sanctions should be applied, since pay discrimination of this type

*Insert ¶ #*

discourages physicians fron building a career meaningful to the improvement

of veteran care. The legal costs not recoverable in my age discrimination case

amounted to in excess of $180,000. Costs for the appeals were paid by taxpayers.


3    Other sanctions should be applied, since disrespect and subversion of the

*Insert ¶ #*

EEOC process will discourage Federal employees for choosing EEOC as a venue

to correct issues of discrimination in general. The alternates at the MSPB or the

Federal Courts.


*Insert ¶ #*




Dated: 2.24.26

Sign: B. l. Olson

Print Name: Bonnie L Olson, MD

7

*Page Number*

7

EXHIBIT

A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Bonnie L. Olson a/k/a
Adena J.,[1]
Petitioner,

v.

Douglas A. Collins,
Secretary,
Department of Veterans Affairs,
Agency.

Petition No. 2025002227

Appeal No.  2022001544

Agency No. 200P-0691-2015104335

DECISION ON A PETITION FOR ENFORCEMENT

Complainant petitioned the Equal Employment Opportunity Commission (EEOC or Commission) to enforce EEOC Appeal No. 2022001544, under 29 C.F.R. § 1614.503. This petition for enforcement was accepted and docketed by the Commission on April 1, 2025.

When considering a petition for enforcement, the Office of Federal Operations, on behalf of the Commission, will "ascertain whether the agency is implementing the decision of the Commission." 29 C.F.R. § 1614.503(b).

Based on our review of the petition, the Agency's submissions, and all relevant documentation in the record, we find that the Agency has implemented the final decision. Although the Agency's implementation may not have been perfect, it has been adequate or acceptable enough to constitute satisfactory compliance, such that the Office of Federal Operations will not undertake further efforts to obtain compliance. See 29 C.F.R. § 1614.503(b), (d).

---

[1] This case has been randomly assigned a pseudonym which will replace Petitioner's name when the decision is published to non-parties and the Commission's website.

2                                            2025002227

Accordingly, the Office of Federal Operations, on behalf of the Commission, DENIES this petition for enforcement. There is no right of administrative appeal from this action.

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_Carlton M. Hadden_
_____
Carlton M. Hadden, Director
Office of Federal Operations


June 25, 2025
Date

EXHIBIT

B

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Los Angeles District Office**



AJ Richard Peterson
255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
(213) 785-3037
richard.peterson@eeoc.gov

**Bonnie Olson,**

      Complainant,

    v.

**Department of Veterans Affairs,**

      Agency.

Hearing No. 480-2021-00054X
Agency No. 200P-0691-2015104335

Hearing No. 480-2021-00055X
Agency No. 200P-0691-2016105330

Date: January 4, 2021

## DECISION AND ORDER ENTERING JUDGMENT

In the order dated October 22, 2020 (October Order), I granted summary judgment in favor of the Agency for claims 1 and 3 of Agency No. 200P-0691-2015104335 as well as claims 1-7 of Agency No. 200P-0691-2016105330. I issue a decision and enter summary judgment in favor of the Agency for those claims and incorporate the October Order by reference. The only claim for further consideration is claim 2 of Agency No. 200P-0691-2015104335. For consideration in this Decision and Order Entering Judgment following the October Order is resolution of the Agency's motion to dismiss; the notice of intent to grant summary judgment in favor of Complainant for claim 2 ("pay claim") of Agency No. 200P-0691-2015104335 (Notice); the notice regarding briefing for relief on the pay claim; and the show-cause order to the Agency for failing to develop an impartial and appropriate factual record. Since issuance of the order, the parties have filed the following, which will be addressed herein:

- Regarding Dismissal (*see* Section 1 below):
  - Agency's Motion to Dismiss, dated November 2, 2020
  - Complainant's Opposition to Agency Motion to Dismiss, dated November 6, 2020
- Show-Cause Order (*see* Section 2 below):
  - Agency's Response to Order to Show Cause, dated November 6, 2020
- Regarding Summary Judgment for the Pay Claim (*see* Section 3 below):
  - Complainant's Response to Order, dated October 29, 2020
  - Agency's Opposition to Summary Judgment, dated November 6, 2020
  - Complainant's Reply to Agency Opposition to Summary Judgment, November 11, 2020
- Regarding Relief (*see* Section 4 below):
  - Agency's Objection to Proceeding by Written Submission, dated October 29, 2020

-1-

12

- o   Complainant's Statement of Relief, Memorandum of Points and Authorities, Declarations, and Exhibits in Support Thereof, dated November 6, 2020
- o   Agency's Request for Extension & Response to Complainant's Statement of Relief, dated November 13, 2020
- o   Complainant's Reply to Agency's Response to Statement of Relief, November 17, 2020

Finally, in Section 5 I enter judgment on the subject complaints.

## 1.   Order Denying Agency's Motion to Dismiss

The Agency moves to dismiss the pay claim "for lack of jurisdiction pursuant to Commission regulation 29 C.F.R. §§ 1614.107(a)(1); 1614.103(a)." The Agency argues that the statutory requirements under 38 U.S.C. § 7431 "commits market pay setting exclusively to the Agency," such that the Commission has no jurisdiction to review the Agency's decisions setting market pay for doctors.

Pursuant to 29 C.F.R. § 1614.109(b), "Administrative judges may dismiss complaints pursuant to § 1614.107, on their own initiative, after notice to the parties, or upon an agency's motion to dismiss a complaint." Once a complainant requests a hearing, the decision whether to dismiss a claim or complaint becomes a matter of discretion (rather than mandatory as it is for an agency before receipt of the hearing request), and the administrative judge has broad scope of discretion to regulate the conduct of the hearing. *Kenyatta S. v. Dep't of Justice*, EEOC Appeal No. 0720150016 (June 3, 2016).

The Commission's broad jurisdiction in age cases extends to all "personnel actions" affecting individuals aged 40 and older to determine whether they are "made free from any discrimination based on age," or, in other words, whether they are "untainted by any consideration of age." 29 U.S.C. § 633a(a); *Babb v. Wilkie*, 140 S. Ct. 1168 (2020). Personnel actions are considered broadly. For example, the *Babb* Court noted that the actions listed under 5 U.S.C. § 2302(a)(2) reflect the kinds of actions Congress had in mind when legislating the federal-sector ADEA provision. That section includes "a decision concerning pay, benefits, or awards" as "personnel actions." The United States has waived sovereign immunity for personnel actions, including decisions concerning pay. The Commission has found little trouble in adjudicating decisions concerning pay related to the Agency's alleged discriminatory actions in setting market pay. *See, e.g, Margeret M. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120170362 (Feb. 21, 2019) (finding violation of the Equal Pay Act and Title VII where "the Agency only provided vague statements to justify the pay differential," noting the lack of information reflecting how relevant salaries were set); *Margeret M. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2019005747 (Sept. 24, 2020) (adherence to 38 U.S.C. § 7431 may articulate a legitimate nondiscriminatory reason). The Commission has also held that the Agency's failure to appropriately set pay under the relevant pay act's predecessor (1991 Physicians and Dentists' Special Pay Act). *Rose v. Dep't of Veterans Affairs*, EEOC Appeal No. 0195021 (Sept. 18, 1998) (finding that denial of special pay under the Act was retaliatory).

13

I note that while the Commission has delineated it jurisdiction regarding other statues, it has been careful to explain that it cannot find violations of those statues. The Commission can only find violations of the statutes under its regulation. And where agencies have discretion to take personnel actions, the Commission has consistently held that it can adjudicate decisions that are tainted by discriminatory considerations. For example, in the context of overtime, the Commission cannot provide the statutory or regulatory remedies under the FLSA (e.g. payment of overtime at a higher rate); however, the Commission has jurisdiction to determine whether overtime assignments are discriminatorily assigned. *See, e.g., Smalls v. Dep't of the Air Force*, EEOC Request No. 05970951 (Nov. 26, 1997) ("The Commission has no jurisdiction to find a violation of the Fair Labor Standards Act (FLSA). However, it is clear from the record that appellant is alleging that the agency denied her overtime and compensatory time for discriminatory reasons. Appellant should be allowed to fully develop the record regarding denial of overtime and compensatory time... [B]ecause appellant is alleging that the violation of the FLSA resulted in the denial of overtime and compensatory time to her for discriminatory reasons, the agency should accept the allegation."). Similarly, the Commission has no jurisdiction to review the merits of a security clearance determination. *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988). But it does have jurisdiction over claims that security clearance considerations are applied in a discriminatory manner. *Complainant v. Dep't of Defense*, EEOC Appeal No. 0120122688 (2014); *Alexander v. Dep't of the Army*, EEOC Appeal No. 0720060050 (2010) (finding the agency initiated a security clearance review based on the complainant's religion).

Regarding the Agency's collateral attack argument, the Agency has failed to identify another proceeding under attack. *See Wills v. Dep't of Def.*, EEOC Request No. 05970596 (July 30, 1998); *Kleinman v. U.S. Postal Serv.*, EEOC Request No. 05940585 (Sept. 22, 1994); *Lingad v. U.S. Postal Serv.*, EEOC Request No. 05930106 (June 25, 1993).

In sum, I deny the Agency's motion to dismiss because the Commission has authority to determine whether personnel actions are tainted by any consideration of age and a decision concerning pay is a personnel action. Moreover, I exercise my broad discretion not to dismiss the claim.

**2. Order Imposing Sanctions**

In the October Order, I ordered the Agency to show cause for its failure to develop an impartial and appropriate factual record when it did not provide the information requested by the EEO Investigator as explained in the IF at 181-183 ("The documents were not received to include in this case. Several attempts were made to obtain documents from EEO Program Manager," including relevant SF50s, organizational data, explanation of pay increases, rationale for pay schedule, etc.) or testimony relevant thereto.

As explained in the show-cause order:

> EEOC Regulation 29 C.F.R. § 1614.108(b) requires, *inter alia*, that the Agency develop an impartial and appropriate factual record upon which to make findings on the claims raised in the complaint. One purpose of an investigation is to gather

-3-



facts upon which a reasonable fact finder may draw conclusions as to whether a violation of the discrimination statutes has occurred. *Id.*; EEO MD-110, at Ch. 6, § IV.B. An investigation must include "a thorough review of the circumstances under which the alleged discrimination occurred; the treatment of members of the Complainant's group as compared with the treatment of similarly situated employees...and any policies and/or practices that may constitute or appear to constitute discrimination, even though they have not been expressly cited by the complainant." *Id.* at § IV.C. Also, an investigator must identify and obtain "all relevant evidence from all sources regardless of how it may affect the outcome." *Id.* at § VI.D; *see also Ross H. v. U.S. Postal Serv.*, EEOC Appeal No. 0720180001 (May 17, 2018) (purpose of discovery to perfect the record and is not a substitute for an appropriate investigation and the agency is responsible for an accurate, complete investigation, completed within 180 days; default judgment appropriate sanction where "basic evidence related to the selections and the selection processes was not included"); *Ramirez v. U.S. Postal Serv.*, EEOC Request No. 05920839 (Mar. 4, 1993) (adverse inference appropriate where "agency failed to ensure that any of the relevant records concerning the interview that formed the basis for appellant's nonselection were retained, and may even have been instrumental in ensuring that some of such relevant records were destroyed"); *Horace L. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120151719 (Nov. 8, 2017).

The Agency's response argues that the investigative record is sufficiently developed because it includes VA Handbook 5007 regarding pay panels (also referred to as compensation panels), Dr. Guze's testimony explaining how pay panels work (pointing at his predecessor), and Dr. Shaner's testimony that the Agency uses seven factors associated with setting market pay.

The Agency takes the limited view that the only issue regarding setting market pay was Complainant's concern with a policy that pay could be increased by receiving an outside offer and presenting it to the Agency, calling it the "obtaining an outside offer" policy. The Agency's reading of the pay claim "is too constricted." *Sallie M. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2020004543 (Nov. 9, 2020) ("more accurate definition of the claim" based on a fair reading was "one of an ongoing pattern" and the alleged incident "was but an example"). In addition to the "obtaining an outside offer policy," Complainant's formal complaint also addresses her concern that pay panels ignored VA regulations regarding market pay. ROI at 59.[1] And the Agency accepted the broader claim that the Agency "failed to pay her the same salary as her younger colleagues." ROI at 79. Moreover, the Agency utterly failed to investigate whether obtaining an outside offer was the reason for higher market pay for any potential comparative. In other words, the investigative record does not even address the Agency's cramped reading of the complaint regarding obtaining outside offers because it did not produce information during the investigation whether younger individuals' higher market pay was based on obtaining an outside offer.

---

[1] Complainant's testimony during the investigation also addresses her concern with a downward trend in market pay for older psychiatrists. ROI at 113.

The investigative record failed to produce SF50s for Complainant's alleged comparative employees (which would identify ages and pay differentials), pay panel documentation for the relevant period (for pay differentials and potential explanations for differentials), and individualized explanations for comparative employees' higher pay. Despite the Agency's access to this information and the EEO Investigator's request for the information, the Agency argues that Complainant failed to provide rebuttal testimony. It is unclear what the Agency expected Complainant to rebut without the foundational information. Nor is there evidence that the Agency sought to provide testimony from Dr. Dean Norman (to whom Dr. Guze pointed for setting pay).

Instead, the Agency's investigation only provided comparative salaries for Drs. Garrick and Diefenbach, who were similarly aged to Complainant, despite her having provided the Agency a list of over 70 potential comparatives, which included several substantially younger doctors with higher market pay for comparison. ROI at 194-196.

The Agency provides an affidavit from Ann Sood to evidence that relevant documents were provided to the EEO investigator. However, Sood only states, "I *believe* the agency was able to provide several relevant documents through a series of emails I sent to Investigator Dailey on February 17, 2016." (Emphasis added.) The screenshot of Sood's inbox does show that she sent some documents to the investigator on that date. I note that the investigation was completed on February 11, 2016, and the investigator reports having incorporated the documents provided by the Agency, and resubmitted it on March 1, 2016. ROI at 2. Nevertheless, even if Sood provided some information to the investigator for inclusion, the investigative record remained deficient without the foundational information regarding Complainant's pay claim.

The Agency also argues that it has not failed to comply with a Commission order to supplement the record. I note that EEO MD-110 directs that an administrative judge is charged with *either* issuing a show-cause order to an agency for developing an impartial and appropriate factual record *or* requesting the information. EEO MD-110, Ch. 7 § III.A ("Before an Administrative Judge may sanction an agency for failing to develop an impartial and appropriate factual record, the Administrative Judge must issue an order to the agency or request the documents, records, comparative data, statistics, or affidavits."). In my broad discretion, given the gravely derelict investigative record, I determined it was more appropriate to issue a show-cause order than request the information. Therefore, I have complied with the cited provision of the Commission's Management Directive and there is no procedural imperfection.

The Agency also relies on my order dated December 26, 2019, which stated, "I have determined that a hearing may be necessary to allow the record to be sufficiently developed regarding Complainant's claims." Rather than supporting its position that such a statement did not specifically refer to inadequacies in the record, the statement undermines the Agency's position. The statement demonstrates a concern that the record was not sufficiently developed. Because there were only procedural matters between that order and the order dated October 22, 2020 (based on the parties' joint request for extension and the COVID-19 pandemic), it is unsurprising that the Agency's failures were addressed at a later date. Moreover, as addressed above, administrative judges are accorded broad discretion in adjudicating the complaint, to include revisiting and detailing the Agency's insufficient investigation. *Kenyatta S. v. Dep't of Justice*,

-5-

EEOC Appeal No. 0720150016, n.3 (June 3, 2016) ("The Administrative Judge shall have the power to regulate the conduct of a hearing. The Administrative Judge has full responsibility for the adjudication of the complaint. This responsibility gives the AJ wide latitude in directing the terms, conduct, or course of Administrative hearings.") (collecting authority) (citations omitted).

Finally, the Agency argues that Complainant has not asserted prejudice regarding the adequacy of the investigation, which will be addressed below.

I find that the Agency failed to develop an impartial and appropriate factual record. Therefore, I must determine whether and to what extent sanctions should be imposed.

Sanctions serve a dual purpose. On the one hand, they aim to deter the underlying conduct of the non-complying party and prevent similar misconduct in the future. *Barbour v. U.S. Postal Serv.*, EEOC 07A30133 (June 16, 2005). On the other hand, they are corrective and provide equitable remedies to the opposing party. Given these dual purposes, sanctions must be tailored to each situation by applying the least severe sanction necessary to respond to a party's failure to show good cause for its actions and to equitably remedy the opposing party. *Royal v. Dep't of Veterans Affairs*, EEOC Request No. 0520080052 (Sept. 25, 2009). Several factors are considered in "tailoring" a sanction and determining if a particular sanction is warranted: 1) the extent and nature of the non-compliance, and the justification presented by the non-complying party; 2) the prejudicial effect of the non-compliance on the opposing party; 3) the consequences resulting from the delay in justice; and 4) the effect on the integrity of the EEO process. *Gray v. Dep't of Defense*, EEOC Appeal No. 07A50030 (Mar. 1, 2007).

I find that the extent and nature of the non-compliance is fundamental, and the Agency's justification does not mitigate its non-compliance. I have addressed above the grave deficiencies in the record, which demonstrate that the Agency failed to adequately address the burden shift in the *McDonnell Douglas* framework to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. The Agency failed to adequately address this requirement, not offering Complainant at the conclusion of the investigation the opportunity to respond to a specific, clear, and individualized explanation for why there was such a pronounced market pay differential for substantially younger colleagues. Complainant was deprived of the opportunity to address the Agency's reasons because they were "so generalized, conclusory, and vaporous as to offer no substantive explanation of the Agency's action." *See Fullman v. U.S. Postal Serv.*, EEOC Appeal No. 01A31036 (Mar. 18, 2004). The Agency's arguments that it provided policies and testimony from Dr. Guze do not address the deficiencies in the record. It was the Agency's obligation during the investigative period to provide comparative information relevant to Complainant's claim of lower pay than younger colleagues and to explain the difference. The Agency did not explain the difference. A black-letter policy devoid of an Agency official's testimony does not explain the difference. The only Agency official offered by the Agency, Dr. Guze, said it was his predecessor's fault, which does not explain the difference. Instead, Complainant produced competent evidence that many younger colleagues were being paid higher than her and the Agency did not bother to produce the SF50s for these individuals to address her claim, nor the pay panel documentation that determined the pay for Complainant and her colleagues, nor testimony from the pay panels explaining their determinations. I note that there is no evidence that this information was provided to the EEO investigator in response to requests. And even if it

-6-

was provided, it was not included in the investigative file. To the extent the investigator received the information and failed to provide it, the responsibility still rested with the Agency to ensure that the investigation included the information. *Cox v. Social Security Administration*, EEOC Appeal No. 0720050055 (2009) (responsibility for accurate, complete investigation squarely placed upon the agency). Therefore, I do not find that the Agency has justified its non-compliance with the Commission's regulations.

I find that the Agency's failure to provide the required evidence at the time of completing the investigation had a significant prejudicial effect on Complainant. Complainant was entitled to an impartial and appropriate factual record at the completion of the investigatory period. 29 C.F.R. § 1614.108. Doing so would have allowed Complainant the opportunity during the investigation to address the Agency's reasons and put forward evidence of pretext, as applicable, in rebuttal. Additionally, given the deficiencies in the record, Complainant was obligated to choose between seeking a final agency decision based on an incomplete record or proceeding through the hearing process to seek a sanction or otherwise supplement or perfect the record through discovery, a costlier option. That is especially so here, whether Complainant knew it or not, because she only asserts an ADEA claim and she is represented by an attorney, whose fees are not recoverable.

While there have been years of delays regarding Complainant's claims, I do not discern delays directly attributable to the inadequacies of the investigative record.

Finally, I find a substantial negative effect on the integrity of the EEO process where the Agency has failed to comply with the fundamental requirements of investigating Complainant's complaint and providing Complainant an opportunity rebut the Agency's reason for the termination decision. The effect on the integrity of the EEO process should not be underestimated when tailoring a sanction. *Cox v. Soc. Sec. Admin.*, EEOC Appeal No. 0720050055 (Dec. 24, 2009). "Protecting the integrity of the 29 C.F.R. Part 1614 process is central to the Commission's ability to carry out its charge of eradicating discrimination in the federal sector." *Id.* "The Commission must ensure that all parties abide by its regulations and orders." *Bertie J.*, EEOC Appeal No. 0120170806. This is especially so where an investigator has sought relevant information from the Agency during the investigation and the Agency has failed to provide it.

In sum, I find that the Agency failed to comply with 29 C.F.R. § 1614.108(b). In review of the factors above and considering the dual purpose of deterring future non-compliance and equitably remedying Complainant, I find that the Agency's non-compliance warrants a meaningful and considerable sanction. After carefully considering the circumstances of this case, I issue the following orders, which will effectively emphasize to the Agency the need to comply with the Commission's regulations regarding investigations:

> I consider established that the Agency cannot provide a specific, clear, and individualized explanation as to why Complainant was paid less than younger colleagues, which Complainant learned of on May 29, 2015.

This sanction is appropriately tailored to the evidence the Agency failed to provide during the investigation. I note that this sanction is more appropriate than considering Complainant's *prima*



*facie* case for the pay claim as established because, as addressed below, Complainant can establish her *prima facie* case at the summary judgment stage without the sanction.

### 3.   Order Granting Summary Judgment in Favor of Complainant for the Pay Claim

On October 22, 2020, I issued a notice informing the parties of my intent to issue a decision in favor of Complainant on claim 2 (pay claim) of Agency No. 200P-0691-2015104335 (Notice). The Notice stated the issue before me and outlined the legal standards for summary judgment and relevant burdens for the claim. The Notice further described the grounds upon which I based my determination that the case should be disposed of through summary judgment, including the undisputed facts contained in the record before me. I provided the parties until noon PT on November 6, 2020 to respond, and five days from a response to reply. I also informed them that, unless a party demonstrated there were genuine issues of material fact or credibility in dispute, no hearing would be held. Following the Notice, Complainant filed Complainant's Response to Order, dated October 29, 2020;[2] the Agency filed the Agency's Opposition to Summary Judgment, dated November 6, 2020; and Complainant filed Complainant's Reply to Agency Opposition to Summary Judgment, November 11, 2020.

I conclude that summary judgment in favor of Complainant on the pay claim is appropriate. Making all reasonable inferences in favor of the Agency, I find that there are no material facts in dispute regarding the pay claim based on age such that Complainant establishes a *prima facie* case of disparate treatment based on age and, because of the imposed sanction that it is considered "established that the Agency cannot provide a specific, clear, and individualized explanation as to why Complainant was paid less than younger colleagues, which Complainant learned of on May 29, 2015." Moreover, even in the absence of the imposed sanction, I would find that the Agency has failed to provide a specific, clear, and individualized explanation for Complainant's being paid less than younger colleagues. Finally, even if the Agency's reasons met the burden to articulate legitimate, nondiscriminatory reasons for its actions, Complainant's evidence establishes that these reasons are pretext for age discrimination. I address below the parties' filings submitted in response to the Notice.

As made clear by the Agency's response, while Complainant was paid higher basic pay than some individuals, her market pay, which is discretionary, was lower than younger colleagues. In other words, as clarified by the Agency, the Agency's obligation is to articulate a legitimate nondiscriminatory reason for Complainant's lower market pay as compared to substantially younger psychiatrists employed by the Agency's VA Medical Center in West Los Angeles, California. The most straightforward manner for doing so would be to identify each substantially younger comparative and offer competent evidence explaining why that individual's market pay is higher than Complainant's. The Agency did not do this. Rather, the Agency argues that Complainant's lower market pay can be explained by (1) legislative history of a pay statute, (2) statutory language, (3) Federal Register statements, (4) VA Handbook 5007, (5) the date of

---

[2] Complainant's filing was submitted "[s]olely for purposes of preserving an issue in this matter" out of an abundance of caution that section 2.3.2 of the October 22, 2020 order applied to all previous sections. I clarify that the section only applied to the Notice in section 2.3 of the order. Therefore, to the extent Complainant seeks any relief or reconsideration of the earlier sections of the order, I deny Complainant's request to reconsider my decision to deny Complainant's amendment request to rely on a disparate impact theory for the pay claim.

Complainant's appointment, (6) Complainant's statements regarding outside offers, (7) Complainant not taking a Special Location Assignment, (8) a colleague's testimony that psychiatrists are subject to biennial reviews where required factors must be weighed, and (9) that the relevant pay statute "heavily weights market factors set by pay panels because of market forces versus older doctors who get paid more … 'base pay' system the more heavily weights seniority. For items 1-4, I note, as I did above, that black-letter statutes or policies devoid of an Agency official's testimony regarding *this* complainant does not explain the difference. For item 5, the date of appointment does not explain the difference because Complainant's earlier appointment should result in higher market pay than younger, less experienced psychiatrists. That is, at each biennial review, the pay panel must take into account "the level of experience of the physician," which should, unless otherwise explained by a pay panel, result in higher pay for more experienced psychiatrists like Complainant. For item 6, Complainant's concerns that outside offers resulted in higher pay for younger psychiatrists could have stated a legitimate nondiscriminatory reason for the Agency had the Agency put forward evidence that substantially younger comparatives received outside offers, presented them to the Agency, and the Agency paid them at a higher rate. The Agency did not produce evidence that substantially younger comparatives were compensated higher market pay as a result of receiving outside offers.[3] For item 7, the Agency identifies one individual who was an older comparative who potentially received higher pay because of a Special Location Assignment, Dr. Ekram Michiel. However, assuming the evidence as true, such a differential only shows one method for increasing an older psychiatrist's pay, it does not explain why substantially younger comparatives received higher pay, especially when they did not have Special Location Assignments. For item 8, I reproduce the Agency's record citation for Dr. Shaner's testimony, which the Agency claims stands for the proposition that psychiatrists are subject to biennial pay review considering seven factors to set market pay:

> In January of 2015, I showed Dr. Guze a table with the pay of all of our psychiatrists, and I pointed out that many senior highly respected psychiatrists, with many accomplishments, lots of responsibility, were making considerably less, than their substantially younger colleagues. And that is was [sic] a serious problem, leading to low morale and likely the loss of some of our best psychiatrists… And then some time later, I analyzed that date a bit further, so that I could see on a figure – how salaries varied across the age range. And on that figure, it's very clear that across the age range, salaries don't change. Which is very surprising because VA regulations require that Chief of Staff and the Chief of a department reconsider every physician[']s pay, at least every 2 years. And that they consider all 7 in a list of factors, and among these factors are several that are age-related; experience in the field, experience at the VA, and accomplishments. So it would certainly be very odd that on average, older psychiatrists make the same as younger psychiatrists, who don't have the experience or the accomplishments.

---

[3] There is record evidence that one younger comparative employee, Dr. Taheri-Tafreshi, was paid a higher rate of market pay based on an outside job offer. ROI at 114, 158. Therefore, the Agency has provided an individualized, nondiscriminatory reason for this individual's higher pay, and Dr. Taheri-Tafreshi is therefore removed from potential comparatives.

ROI at 171. In a light most favorable to the Agency, Dr. Shaner's testimony cannot stand for the proposition that the Agency's pay panels appropriately considered the market pay factors. Rather, even in its most favorable light, Dr. Shaner's testimony explains that the Agency was paying substantially younger psychiatrists higher pay *in spite of* the Agency's mandates in setting market pay.

For item 9, I note that the pay statute, absent individualized explanation by Agency officials (including pay panelists), is weighted toward setting higher market pay for more experienced psychiatrists. At least two factors ("level of experience" and "prior experience" at the Veterans Health Administration), would be expected to trend toward higher market pay for more senior psychiatrists. Other factors have the same weight across WLA psychiatrists. For example, "the need for the specialty or assignment" will be the same for other WLA psychiatrists as is "the health care labor market for the specialty or assignment." Two other factors could account for pay differences, "board certifications" and "such other considerations as the Secretary considers appropriate." The Agency has not identified any substantially younger comparatives that had higher market pay than Complainant based on a difference in board certifications or "such other considerations." Doing so would have been a route to removing such individuals from the pool of potential comparatives. On the other hand, the documents accompanying the Agency's Opposition demonstrate its inability to articulate a specific, clear, and individualized explanation for Complainant's lower market pay.

Consider some stark examples from Exhibit 4 to the Agency's Opposition:

| Complainant | Amrami, Binyamin; 33yo[4] | Balali, Shabnam | Bernstein, Caryn[5]; 36yo | Choi, Young Mee[6]; 39yo |
|---|---|---|---|---|
| Base: $133924 Market: $59062 <br>• Labor Market for Psychiatrists in Southern California and Los Angeles County is competitive. The service chief's annual pay recommendation is based upon GLA's inability to recruit and retain highly trained | Base: $97987 Market: $97013 <br>• Labor Market for Psychiatrists in Southern California and Los Angeles County is competitive. The service chief's annual pay recommendation is based upon GLA's inability to recruit and retain highly trained | Base: $97987 Market: $112013 <br>• Labor Market for Psychiatrists in Southern California and Los Angeles County is competitive. The service chief's annual pay recommendation is based upon GLA's inability to recruit and retain highly trained | Base: $104521 Market: $103086 <br>• Labor Market for Psychiatrists in Southern California and Los Angeles County is competitive. The service chief's annual pay recommendation is based upon GLA's inability to recruit and retain highly trained | Base: $107788 Market: $99526 <br>• Labor Market for Psychiatrists in Southern California and Los Angeles County is competitive. The service chief's annual pay recommendation is based upon GLA's inability to recruit and retain highly trained |

[4] The Agency redacted the year of birth for all of the SF50s and does not otherwise provide them such that inferential placeholders must be used for determining approximate ages.

[5] According to Dr. Shaner's spreadsheet Dr. Bernstein's market pay was set higher than Complainant's despite being 0.5 Full-Time Equivalent.

[6] According to Dr. Shaner's spreadsheet Dr. Choi's market pay was set higher than Complainant's despite being 0.737 Full-Time Equivalent.

-10-

| psychiatrists who are able to care for the severely ill medical patients. | psychiatrists who are able to care for the severely ill medical patients. | psychiatrists who are able to care for the severely ill medical patients. | psychiatrists who are able to care for the severely ill medical patients. | psychiatrists who are able to care for the severely ill medical patients. |
|---|---|---|---|---|
| • Dr. Olson is board certified in psychiatry and has over 22 years of VA experience. | • Dr. Amrami is board certified in psychiatry and has over 1 years of VA experience. | • Dr. Balali is board certified in psychiatry and has over 1 years of VA experience. | • Dr. Bernstein is board certified in psychiatry and has over 4 years of VA experience. | • Dr. Choi is board certified in psychiatry and has over 6 years of VA experience. |
| • Based on assessment of qualifications, experience, academic achievements, assigned duties and responsibilities, the panel concurred that the current tier is appropriate. They recommend maintaining annual salary of $192986. | • Based on assessment of qualifications, experience, academic achievements, assigned duties and responsibilities, the panel concurred that the current tier is appropriate. They recommend maintaining annual salary of $195000. | • Based on assessment of qualifications, experience, academic achievements, assigned duties and responsibilities, the panel concurred that the current tier is appropriate. They recommend maintaining annual salary of $210000. | • Based on assessment of qualifications, experience, academic achievements, assigned duties and responsibilities, the panel concurred that the current tier is appropriate. They recommend maintaining annual salary of $207607. | • Based on assessment of qualifications, experience, academic achievements, assigned duties and responsibilities, the panel concurred that the current tier is appropriate. They recommend maintaining annual salary of $207314. |

The Agency provides no individualized explanation for such striking discrepancies in market pay between a psychiatrist with 22 years of experience, and psychiatrists with one, one, four, and six years of experience, respectively. Obviously, the Agency did not consider the labor market to be a distinguishing factor between Complainant and Complainant's substantially younger comparatives because it merely copied the same statement for each individual. Nor can it claim that it considered a meaningful difference in "assessment of qualifications, experience, academic achievements, assigned duties, and responsibilities," as the Agency cited to no distinguishing factors meriting higher or lower market pay for any individual. And that is only in the As, Bs, and Cs. Indeed, the Agency's table on page 11 of its Opposition make alarmingly clear that Complainant's market pay of $59,062 was significantly lower than at least 13 younger colleagues whose market pay ranged approximately $30,000 to $74,000 higher than Complainant's. The Agency does not explain why they were paid higher market pay.

As in *Margeret M. v. Department of Veterans Affairs*, EEOC Appeal No. 0120170362 (Feb. 21, 2019), "[T]he Agency [has] only provided vague statements to justify the pay differential." The Commission has instructed that the record must document how any relevant factor "translated into determining their respective salaries." *Id.* Merely reciting that "various factors are considered," in setting market pay does not articulate a legitimate nondiscriminatory reason. *Id.* Therefore, I find that "the Agency failed to provide any specific indication" in setting different

market pay for "Complainant or the comparatives or how it applied" market pay factors "in determining salaries. Moreover, the Agency has only presented vague, unsupported statements regarding how it established the salaries of Complainant and [her] comparatives." *Id.* Upon review, I find, consistent with *Margeret M.* that "the Agency has failed to set forth with sufficient clarity, reasons for the disparity in pay between Complainant and [her] comparatives such that she has been given a full and fair opportunity to demonstrate that those reasons are pretext for discrimination." *Id.* Moreover, the evidence provided in the Agency's Opposition to the Notice demonstrates "weaknesses, implausibilities, inconsistencies, [and] contradictions" in the Agency's proffered reasons such that the reasons are unworthy of credence, including comparative and statistical data revealing differences in treatment across age group lines, unequal application of Agency policy, deviations from standard procedures without explanation or justification, and inadequately explained inconsistencies in the evidentiary record.. *Susann G. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120162437 (May 25, 2018) (quoting *Evelyn S. v. Dep't of Labor*, EEOC Appeal No. 0120160132 (Sept. 14, 2017)). In sum, I find that Complainant has established that age was a but-for cause of the Agency's personnel action and I enter summary judgment in favor of Complainant for the pay claim.

### 4. Relief

Because of my decision in favor of Complainant on the pay claim, I must determine Complainant's entitlement to relief. Complainant seeks lost pay, lost pension contributions, and expert fees.[7] The Agency requested an extension to respond, which I deny, as the issues on relief are straightforward in a complaint under the ADEA based on disparate pay and in consideration of the relief sought by Complainant. I similarly deny the Agency's objection to determining Complainant's right to relief based on written submissions. I find that I do not require testimony to determine the appropriate relief for Complainant's pay claim.

**Back Pay.** When an employee of an agency is discriminated against, the agency shall provide the individual with non-discriminatory placement into the position they would have occupied absent the discrimination, with back pay computed in the manner prescribed by 5 C.F.R. § 550.805. *See* 29 C.F.R. § 1614.501(c)(1). The purpose of a back pay award is to restore to the complainant the income they would have otherwise earned but for the discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. at 418-419 (1975); *Davis v. U.S. Postal Service*, EEOC Petition No. 04900010 (Nov. 29, 1990). A differential in pay can generate back pay. EEO-MD-110, Chap. 11 § III.A. The Commission construes "benefits" broadly to include annual leave, sick leave, health insurance, and retirement contributions. *Vereb v. Department of Justice*, EEOC Petition No. 04980008 (Feb. 26, 1999); *Holly v. U.S. Postal Service*, EEOC Petition No. 04A50003 (Nov. 2, 2005). And where payment of a backpay award is made in a lump sum, the agency is responsible for proven increased income tax burden. *Complainant v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120113877 (2014).

As noted above, the Commission has addressed a similar case of discrimination related to a discriminatory pay differential for a physician employed by the Agency. There, the Commission ordered the Agency to pay the complainant back pay for the difference between the

---

[7] I note that compensatory damages and attorney's fees are not available under the ADEA for successful complainants.

complainant's pay and that of the highest paid comparative retroactive to two years prior to filing the formal complaint. *Margeret M. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120170362 (Feb. 21, 2019) (finding the appropriate remedy to be the difference in salary between the complainant and highest paid comparative).

Back pay relief is similarly appropriate here for the difference between Complainant's market pay and that of the highest comparative's market pay retroactive to August 21, 2013, and other appropriate benefits Complainant would have been entitled to but for the discrimination. However, I note that Congress has not enacted legislation to amend the ADEA to include interest on back pay. *See Ryan v. Dep't of Def.*, EEOC Petition No. 04960005 (Nov. 7, 1996); *Asuncion v. Dep't of the Navy*, EEOC Request No. 05940480 (Oct. 13, 1995); *Wes S. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2020002082 (Sept. 15, 2020) (excluding interest from ADEA back pay award).

Here, I find that the definition for comparative for determining relief for this complaint is any substantially younger psychiatrists (5 years younger or more) employed by the Agency's WLA VAMC paid market pay higher than Complainant from August 21, 2013 to present. However, because the Agency provided an explanation for higher market pay for Dr. Taheri-Tafreshi, this individual is removed from the pool of comparatives.

I do not decide whether the report from Mr. Weiner, an expert contracted by Complainant, states appropriate amounts of Complainant's back pay or pension contributions as the foregoing adequately addresses and provides direction to the Agency for appropriate back pay and benefits relief.

The Agency convincingly argues that Complainant does not meet the requirements for placement in Tier 2 of the pay schedule; nor is there an appropriate claim before me that Complainant was not placed in the appropriate tier of the pay schedule. Therefore, when determining Complainant's back pay, Complainant must be considered in Tier 1 of the pay schedule with all applicable authorized exceptions (e.g. Blanket Tier Exception for Psychiatrists, dated May 24, 2016, *see* Statement at Ex. H).

The Agency states in its Reply to Complainant's Statement that it seeks guidance on the effect of various factors. The foregoing explanations sufficiently clarify the appropriate relief for the pay claim. I note that the Agency's use of pay panels may aid the Agency in determining Complainant's highest paid comparative in terms of market pay for the relevant period. The Agency's argument that market pay is higher at the time of appointment than it is for longer-tenured psychiatrists demonstrates the age-bias affecting the setting of Complainant's market pay and does not justify a downward adjustment to Complainant's back pay award. The above explanations regarding relief provide sufficiently specific instruction "clarify[ing] what amount it expects the Agency to assign." Reply at 4. The Agency's argument that it is premature to determine relief does not address that pay differentials represent continuing violations so long as the differentials persist. Because a violation has been established beginning on August 21, 2013 and continuing to present, the Agency must pay Complainant retroactive back pay to the present consistent with Commission precedent in *Margeret M.* I note that many of the Agency's concerns about fine-tuning what pay Complainant is due need not be addressed because the Agency failed



to state a legitimate nondiscriminatory reason for Complainant's lower pay. Therefore, the
ordered relief is to raise Complainant to the highest paid comparative regarding market pay,
without addressing the myriad inquiries the Agency sees as problematic.

**Expert Fees.** Complainant requests expert fees as a sanction for an inadequate investigation for
analyzing incomplete data. Complainant has failed to establish that the Agency did not comply
with the Commission's regulations or orders related to potential economic relief. I decline to
impose a sanction for Complainant's expert fees.

**Training and Considering Disciplinary Action.** It is appropriate to order training for agency
personnel found to have engaged in discrimination, and to consider taking disciplinary action
against those officials who engaged in the discrimination. *See James v. Dep't. of Agric.*, EEOC
Appeal No. 0120073831 (Sept. 22, 2009), request for reconsideration denied, EEOC Request No.
0520100086 (Mar. 22, 2010) (ordering the agency to provide the selecting official who
discriminated against complainant 16 hours of EEO training and to consider taking disciplinary
action against the official); *Burton v. Department of Justice*, EEOC Appeal No. 0720090046
(June 9, 2011) (5 hours of EEO training for all facility management and supervisory staff was
appropriate as responsible management officials were high-level management officials); *Kitson
v. Department of Justice*, EEOC Appeal No. 0720100052 (Feb. 15, 2011), *request for
reconsideration denied*, EEOC Request No. 0520110312 (June 10, 2011) (ordering the agency to
provide training for upper-level employees at an agency facility following a finding of
discrimination); *Wagner v. Department of Transportation*, EEOC Appeal No. 0120103125 (Dec.
1, 2010) (ordering the agency to provide EEO training to all employees at an agency facility
following a finding that agency managers and employees subjected complainant to a hostile
work environment). The Commission does not consider training to be discipline. *See Morrow v.
U.S. Postal Service*, EEOC Appeal No. 0720070058 (Nov. 13, 2009).

Pursuant to my findings and conclusions above, I find that it is appropriate for the Agency to
provide eight hours of in-person (or interactive trainer-to-trainee videoconference) EEO training
to the responsible management officials for setting Complainant's market pay from August 21,
2013 to the present regarding the prohibitions against age discrimination under the ADEA. I
further find that it is appropriate for the Agency to consider taking disciplinary action against the
responsible management officials.

**Posting Notice and Commitments.** Pursuant to 29 C.F.R. § 1614.501(a)(1), where there is a
finding of discrimination, it may be appropriate to provide "[n]otification to all employees of the
agency in the affected facility of their right to be free of unlawful discrimination and assurance
that the particular types of discrimination will not recur." *See Complainant v. Dep't of Justice*,
EEOC Appeal No. 0120123467 (Apr. 3, 2015) (upholding posting of notice for 60 days).
Moreover, it may be appropriate for the agency to provide commitments that "corrective,
curative or preventive action will be taken, or measures adopted, to ensure that violations of the
law similar to those found will not recur" and "that the agency shall cease from engaging in the
specific unlawful employment practice found in the case." 29 C.F.R. § 1614.501(a)(2) & (5).

Here, I find that posting of notice is appropriate.



## 5. Order Entering Judgment

Based on my review of the record and the parties' contentions, I enter summary judgment in favor of the Agency for claims 1 and 3 of Agency No. 200P-0691-2015104335 as well as claims 1-7 of Agency No. 200P-0691-2016105330. Additionally, I enter summary judgment in favor of Complainant for claim 2 of Agency No. 200P-0691-2015104335. For the reasons explained in this Decision, I order the following actions:

1. Within 60 days of the date this decision is issued, the Agency shall pay Complainant back pay for the difference between Complainant's market pay and that of the highest comparative's market pay retroactive to August 21, 2013, and other appropriate benefits Complainant would have been entitled to but for the discrimination.
2. After the Agency has calculated and paid Complainant's back pay award, Complainant shall have 60 days following the end of the tax year in which the final payment is received to calculate the adverse tax consequences of any lump-sum back pay awards, if any, and notify the Agency. Following receipt of Complainant's calculations, the Agency shall have 60 days to pay Complainant for any adverse tax consequences established, with a written explanation for any amount claimed but not paid.
3. Within 90 days of the date this decision is issued, the Agency shall provide eight hours of in-person or interactive trainer-to-trainee videoconference training to the responsible management officials for setting Complainant's market pay from August 21, 2013 to the present regarding the prohibitions against age discrimination under the ADEA.
4. Within 60 days of the date this decision is issued, the Agency shall consider taking disciplinary action against the management officials responsible for the discrimination addressed in this Decision. The Commission does not consider training to be a disciplinary action. The Agency shall report its decision to the Commission and specify what, if any, action was taken. If the Agency decides not to take disciplinary action, then it shall set forth the reasons for its decision not to impose discipline.
5. Within 60 days of the date this decision is issued, the Agency shall post notice in any conspicuous location where employee notices are usually posted at the Agency's WLA VAMC of this final judgment against the Agency, and the notice shall remain in place for 60 days.

It is so ordered.

For the Commission:

Richard Peterson
Administrative Judge

-15-

26

## Certificate of Service

I hereby certify that this Order was sent by me on the date set forth below via the electronic docket to Complainant, Complainant's Representative, Agency Representatives, and Agency Designee.

Date: January 4, 2021

Richard Peterson
Administrative Judge

27

EXHIBIT

C

OFO/Petition No. 2025002227

Brown & Goodkin
Steven E. Brown, Bar #055491
Daniel M. Goodkin, Bar #212178
910 Hampshire Road, Suite G
Westlake Village, CA 91361-2888
Telephone: (805) 496-9777
Fax:        (805) 496-6368
sbrownesq@federal-law.com
Attorneys for Complainant
Bonnie Olson

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS

BONNIE OLSON,

                    Complainant,

vs.

ROBERT WILKIE, Secretary,
Department of Veterans Affairs,

                    Agency.

_____/

**Appeal No. 2025001081**
EEOC Nos. 480-2021-00054X and
            480-2021-00055X
AGENCY Nos. 200P-0691-2015104335
            and 200P-0691-2016105330

**APPELLANT'S BRIEF IN SUPPORT
OF APPEAL/PETITION FOR ENFORCE-
MENT OF PRIOR OFO ORDER**

January 10, 2025

Appellant BONNIE OLSON hereby submits her appeal brief / petition for enforcement regarding the Agency's noncompliance with OFO's order dated 10/30/2023. That order stemmed from a previous appeal C had filed alleging noncompliance with FADS issued on 01/19/2021 and 12/28/2021. References herein to "AJ" are to Administrative Judge Richard Peterson; to "Agency" are to the Veterans Administration; to "OFO" are to the EEOC's Office of Federal Operations; and to "C" are to Complainant/ Appellant Bonnie Olson.

This is the second appeal Complainant has had to file [1] in order to obtain the full benefits promised in the referenced FADs. The basis of this present appeal is that the Agency, although it paid C an amount for back pay, still has not explained to C how it arrived at the figure it paid – which C feels understated the amount of her loss.

_____

[1] In this matter, the Agency also filed a "Request for Reconsideration" with OFO in 2021 which was dismissed by the Commission.

OFO/Petition No. 2025002227

The following is a chronology of the events relevant to this appeal/petition:

| 01/04/2021 | AJ issues a fully favorable Decision regarding C's discriminatory pay claim |
|---|---|
| 01/19/2021 | Agency issues a FAD saying that it will fully implement the AJ's Decision |
| 02/03/2021 | Agency files a "Request for Reconsideration of Decision" with OFO (which was docketed as Appeal No. 2021003081), purporting to challenge the AJ's Decision that it had just decided to fully implement. |
| 03/23/2021 | C's counsel writes to Agency alleging noncompliance with the FAD, since no back pay has been issued to C. |
| 04/15/2021 | Agency issues a back pay calculation of $224,910.00 (see *Exhibit A*) |
| 04/22/2021 | C's counsel emails Agency requesting more information about how back pay was calculated, saying: "There appears to be a difference of at least $85,000 between our expert's calculations and those of the Agency. This is substantial enough for me to urgently request additional information sufficient for us to understand how the Agency arrived at the $224,910 figure. I am therefore requesting all the information and figures used to make the calculation of the $224,910 figure be provided to me within ten (10) days. Thank you." |
| 05/25/2021 | OFO dismisses the Agency's "Request for Reconsideration of Decision" |
| 06/22/2021 | Agency issues a back pay calculation of $385,016.00 (see *Exhibit B*) |
| 08/06/2021 | Agency issues a back pay calculation of $218,040.00 (see *Exhibit C*) |
| 08/12/2021 | Agency issues another back pay calculation of $218,040.00 (*see Exhibit D*) |
| 11/01/2021 | After multiple additional communications from C;s counsel to the Agency since March (including those sent on 04/22/2021, 05/12/2021, 05/24/2021, 06/23/2021, 08/03/2021, 09/01/2021, and 09/20/2021), C's counsel sends to Agency a notice of noncompliance. |
| 11/17/2021 | C's counsel writes to Agency again explaining deficiencies in Agency back pay information provided so far. |
| 12/28/2021 | Agency emails C's counsel what appears to be its final decision on the back pay amount ($228,076.92) (see *Exhibits E* and *F*) |
| 01/2022 | In response, C's counsel requests further information about how the amount was calculated |
| 01/2022 | Agency fails and refuses to provide any further information |
| 01/26/2022 | C files an appeal (docketed as 2022001544) with OFO stating the above facts and requests an order that the Agency provide the missing information. |
| 02/09/2022 | C files a brief in support of the appeal. |
| 03/11/2022 | Agency files a brief in opposition to the appeal. |
| 03/15/2022 | C files her reply brief. |
| 04/29/2022 | While the appeal was pending, Agency pays C a back pay amount of $219,906.14 added to her regular paycheck, under "Retroactive Pay", marked "market pay" (see *Exhibit J*). |
| 10/30/2023 | In appeal number 2022001544, OFO finds the Agency's information about back pay calculations insufficient, noting on page 6 that Agency failure to provide information has been a recurring issue in the case, and noting on page 7 that "the Agency has not complied with its own order regarding providing [C] with clear, written documentation as to how it reached its back |

OFO/Petition No. 2025002227

| | |
|---|---|
| | pay determinations". OFO finds the Agency not in full compliance, orders that the Agency provide additional information within 90 days, and finds C a prevailing party for purposes of attorney fees. |
| 12/29/2023 | As requested by the Agency, C's counsel timely sends the Agency a fee statement. |
| 01/28/2024 | 90 days having elapsed since the OFO decision, with no additional information received from the Agency, C sets a deadline for the Agency to provide additional information about how back pay figure was calculated. |
| 02/22/2024 | C's counsel sends the Agency an email requesting a status update. |
| 03/06/2024 | C's counsel sends the Agency an email requesting a status update. |
| 02/23/2024 | Agency promises action on C's counsel's request for more information. |
| 03/14/2024 | Agency emails C's counsel another copy of its 12/21/2021 back pay calculation, with partial documentation about five comparator employees used in that calculation. Email's attachments state that some SF-50s are no longer available since, for example, "Effective June 25, 2016, VA Greater Los Angeles Healthcare System was no longer the legal custodian of records for Employee A1." (see *Exhibit G*) |
| 04/15/2024 | Per the 2023 OFO order, the Agency pays C's counsel the attorney fee amount requested in the fee statement. |
| April 2024 | Efforts by C's counsel and Agency counsel to have a phone/Zoom conference on the back pay issue are unsuccessful, in part due to a VA subject matter expert being off work due to sickness (see *Exhibit H*). |
| 06/12/2024 | C's counsel sends detailed email to Agency (see *Exhibit H*) again asking for additional back pay information, providing specific higher-paid comparators that were used in the companion case of Dr. Andrew Shaner, asking why the Agency is not using these comparators in this case since the differences in their pay and the pay of the Agency's comparators are "substantial and unexplained", and setting a deadline of 07/12/2024 for a response. |
| 07/09/2024 | C's counsel's paralegal sends an email reminding Agency that it still has not responded to the 06/12/2024 information request. |
| 07/12/2024 | Agency misses the deadline without further communication or comment. |
| 08/22/2024 | C's counsel's paralegal again emails the Agency (Joseph Dronchi and Maureen Ney) stating additional information is still needed, C would like to avoid filing another appeal but may have to do so if the Agency continues to fail to provide additional information about how it arrived at the back pay figures it used in making the payment. |
| 08/26/2024 | C calls her counsel asking for an update, the paralegal advises her we still have not received any more information from the Agency. |
| 09/09/2024 | C asks her counsel if she should contact her Congressman about the Agency delay in responding to information requests, expressing disbelief that the Commission seems not to require parties to comply with its orders. |
| 09/12/2024 | C's counsel responds to her questions, stating she is free to contact her Congressman but we would need to follow up with EEOC in the event the Agency keeps failing to respond. |
| 09/13/2024 | C's counsel further responds to her questions, stating that the Agency had responded some months ago, but with just the same information they had |

OFO/Petition No. 2025002227

| | provided before, and explaining that the Commission does require the parties to follow their orders, but only if a party points out non-compliance by the other party. |
|---|---|
| 09/18/2024 | C's counsel's paralegal again contacts the Agency, Mr. Dronchi, asking him to respond to her 08/22/2024 email or let her know who she can contact. |
| 09/21/2024 | C emails her counsel with her own calculation of what the lost wages should be, including comparators used (**Exhibit I**). |
| 11/19/2024 | Not having heard from the Agency, C's counsel's paralegal emails C about how C could log onto C's EEOC account to file this appeal. |
| 11/20/2024 | C's counsel's paralegal and C exchange emails re access to C's EEOC account re filing of appeal. C also advises the paralegal that she had contacted her Congressman just before the election, and had gotten no response yet, saying "To me, I just can't understand how EEOC can tell VA to respond to an appeal they have accepted and then do nothing to enforce it when VA does nothing." C provides login information for her EEOC account, which turns out to be incorrect -- so still no access. |
| 12/19/2024 | C's counsel's paralegal and C exchange emails again as access still not available for filing of appeal; issue of access is resolved. |
| 12/20/2024 | C files this appeal. |

## INTRODUCTORY STATEMENT

This is the second appeal filed in this case by C. This is a pay disparity case based on age discrimination, in which the AJ found that the Agency discriminated against older medical staff doctors when it set and paid, to its psychiatrists at a particular VA facility, a pay element called **"market pay"**. The remaining issue is computation of the back pay. The earlier appeal (2022001544) filed by C, dated 01/26/2022, resulted in a fully favorable OFO decision on 10/30/2023 ordering the Agency to provide additional information within 90 days. **The arguments set forth in that earlier appeal remain relevant. The only circumstances that have changed since C filed that earlier appeal are that on 04/29/2022 the Agency paid C $219,906.14 for back pay, and that on 03/14/2024 Agency counsel provided additional but incomplete documentation about certain comparators. The Agency, however, still has not explained how it arrived at that figure, why it chose the comparators selected, etc. despite several requests that it do so. C and her counsel maintain that the figure paid is substantially lower than it should be.**

In derogation of the AJ Decision and its own Final Agency Decision, the VA has repeatedly failed to adequately explain to C or to her counsel how it arrived at the back pay figure that it paid. In response to our requests for further information, in March 2024 the VA simply sent us another copy of its 12/21/2021 back pay calculation – which we already had – along with partial documentation regarding the 5 comparators used in that old calculation -- but the Agency provided no discussion of why those comparators and not others were chosen, what pay periods the pay rates utilized were paid to C and the comparators, etc.

//

A.    THE AJ ORDERED, AND THE AGENCY AGREED, TO PAY C BACK PAY FOR THE
      PERIOD 08/21/2013 TO 01/04/2021, CALCULATED AS SET FORTH BY THE AJ.

In his Decision, at page 12, the AJ stated that "The purpose of a back pay award is to
restore to the complainant the income they would have otherwise earned but for the
discrimination [citations omitted]." Further, the AJ stated, at page 13: "**Back pay relief is
similarly appropriate here for the difference between Complainant's market pay and
that of the highest comparative's market pay retroactive to August 21, 2013**, and other
appropriate benefits Complainant would have been entitled to but for the discrimination
[emphasis added]."

The AJ ordered that, for purposes of back pay, "highest comparative" is defined as
"[A]ny substantially younger psychiatrists (5 years younger or more) employed by the
Agency's WLA VAMC paid market pay higher than Complainant *from August 21, 2013 to
present*. However, because the Agency provided an explanation for higher market pay for
Dr. Taheri-Tafreshi, this individual is removed from the pool of comparatives." (Decision page
13; emphasis added). The AJ further ordered that the back pay award should be computed
based on C being considered in Tier 1 (not Tier 2, which was an issue). (Decision, page 13)

In his Order Entering Judgment, the AJ ordered:

"Within 60 days of the date this decision is issued, the Agency shall pay
Complainant back pay for the difference between Complainant's market pay
and that of the highest comparative's market pay retroactive to August 21,
2013, and other appropriate benefits Complainant would have been entitled to
but for the discrimination."

In his Decision, the AJ ordered summary judgment in favor of C on the pay issue (see
Decision, pages 8-12). In a "Final Order" dated 01/19/2021, the VA stated: "Based on its
review of the entire record, the Office of Employment Discrimination Complaint Adjudication
(OEDCA) finds that the EEOC administrative judge's decision is supported by substantial
evidence. We also find that the EEOC administrative judge correctly decided that [C] is
entitled to back pay … We therefore accept the EEOC administrative judge's decision in its
entirety and hereby ORDER the Department to fully implement it."

In response to C's earlier appeal, the OFO, in its 10/30/2023 order, ordered that within
90 days the Agency pay C the back pay (as defined) and:

"The Agency shall advise Complainant in writing of: (1) the amount of back pay and
other attendant benefits due to her, and (2) how management reached its determi-
nations regarding these matters, including but not limited to, providing copies of SF-
50's of all comparators as well as copies of the market pay reviews for each compar-
ator, and all documentation submitted to DFAS to process Complainant's back pay."

The OFO order went on to state that compliance with its order by the Agency is mandatory,
and that C could file a petition for enforcement if the Agency did not comply.

B.    THE INFORMATION PROVIDED BY THE AGENCY TO C REGARDING ITS BACK
      PAY CALCULATIONS IS INADEQUATE AND NOT IN COMPLIANCE WITH THE AJ'S
      DECISION, OFO's PRIOR ORDER, OR THE COMMISSION'S CASE LAW.

C and her counsel have consistently communicated with the Agency about the basis of
its computation of the back pay award, with no meaningful success, over the several years
since issuance of the AJ's Decision.

i.    In general

The Agency must provide the complainant with its back pay calculations. *Marsa v. Postmaster General*, EEOC No. 01995935 (2001). **The calculations should be explained in a way that is understandable to the complainant**. *Fitzgerald v. Secretary of Homeland Security*, EEOC No. 0120071675 (2009) ("The Commission finds that it is reasonable to require the agency to provide a clear and concise 'plain language' statement of the formulas and methods it used to calculate petitioner's back pay."). Providing complainant with a **full accounting** of how a back pay award was calculated is important. *Vashi v. Postmaster General*, EEOC No. 0120081943 (2011) ("An important aspect of calculating back pay is to provide the complainant with a full accounting of how the award was calculated. Failure to provide that information leads to additional appeals and enforcement petitions and can lead to an additional award of attorney fees if the Commission finds that the agency has not provided the calculations."

Although uncertainties in the method of back pay calculation exist, they should be resolved in favor of the complainant. *Sanders v. Postmaster General*, EEOC No. 04990018 (2001). The Commission follows a simple, general rule regarding back pay calculations: the benefit of the doubt goes to the victim of discrimination. *Johnson v. Postmaster General*, EEOC No. 0120072120 (2010) ("uncertainties involved in a back pay determination should be resolved against the agency which has already been found to have committed acts of discrimination").

**Amounts of back pay to be awarded can change during parts of a back pay period**. For example, an employee is entitled to incremental increases s/he would have received but for the discrimination. *Taylor v. Tennessee Valley Authority*, EEOC No. 01832701, 1238/A10 (1984). Here, C is entitled to receive the difference between her market pay and the market pay of the highest-paid younger comparative (as defined by the AJ) that occurred during the entire back pay period. On a pay-period by pay-period basis, the identity of that comparator and the amount of his or her market pay can change, resulting in a new difference and a new calculation. Similarly, C's market pay can also change from one pay period to the next (based on, but not necessarily at the same time as, the results of a market pay analysis), resulting in a new difference between hers and the relevant comparator's market pay. All these differences must then be added up for the entire back pay period, and be paid to C.

OFO/Petition No. 2025002227

The Agency "final" decision on this issue, dated 12/28/2021 (see **Exhibits E, F** and **G**), does not provide the name(s) of any comparative(s) used in its calculations, making it impossible for C to check the figures against documentation received in discovery (much of which did include such names). **The decision also does not state why certain comparators and not others were chosen for the calculation. The decision also does not state what amounts of market pay were received by C effective on what dates, nor what amounts of market pay were received by the highest comparator, in each (or indeed, any) pay period(s) during the back pay period.** Without such information, C cannot compare what she was paid to what the relevant comparator was paid for each period, to determine whether the Agency's computations are correct. **Full and complete pay records of C and her comparators are either available to the Agency or should have been maintained by the Agency. The claimed unavailability of these records should not defeat C's right to a full and complete accounting – per the Agency (see Exhibit G), the claimed unavailability did not exist until 06/25/2016, well after this complaint was filed in mid-2015.**

When the amount of back pay is in dispute, the burden is on the Agency to produce documentary evidence of the pay C would have received but for the discrimination. _Moreno v. U. S. Postal Service_, EEOC No. 01880274 (1988).  It is not enough for the Agency to correctly compute the back pay – it must provide C with sufficient information to determine whether or not the Agency's calculations are correct. _Morra-Morrison v. Postmaster General_, EEOC No. 04980023 (1999).  **The Agency clearly has not met its burden to produce such sufficient information to C in this case.**

ii.   Use of market pay analyses with only partial pay records or SF-50's

In this case, previous to 2024 the Agency had exclusively utilized references to "market pay analyses", which it says are normally performed once every two years, regarding C and some of the comparators it used to calculate C's pay loss. [2]  **To remedy this, OFO ordered that the Agency provide SF-50's (Notifications of Personnel Action).**  While the Agency has provided copies of all the referenced market pay analyses for each of its chosen comparators (see **Exhibit G**), **it has not provided the required SF-50s for 3 of the 5 comparators it chose.**

iii.   Pay change dates are not reflected by reviewing the market pay analyses

As shown by the exhibits filed with C's earlier appeal, C's pay changed (increased) according to forms SF-50 at somewhat random intervals and dates during the back pay period, while market pay changed less frequently, as shown by VA SF-50's exchanged in discovery: [3]  A "Compensation Panel Action" dated 01/09/2014 regarding C was attached to

---

[2] The AJ's Decision, at page 13, merely states that "I note that the Agency's use of pay panels may aid the Agency in determining [C's] highest paid comparative in terms of market pay for the relevant period." – the Decision does not direct the Agency to exclusively reference pay panel decisions to compute the back pay, or to ignore actual pay records in making the back pay calculations. The attachments to the Agency's 03/14/2024 email say that SF-50s for the comparators designated as A1, A2, and C2 are no longer available to it, and that a new SF-50 would be generated for C2 (which was never provided).

[3] Market pay is called "Locality Adjustment" on many of these records.

the Agency's 11/06/2010 Summary Judgment Opposition, and references $59,062 in market pay, but apparently made no change in C's market pay. **The dates of the market pay analyses for C do not correspond to the dates when C's pay actually changed, as shown by comparing the two sets of dates.**

To the best of our ability, and based on when C's market pay increased as part of the pay she actually received, C's market pay during the back pay period was:

| Inclusive dates: | Amount of C's (actual) market pay |
|---|---|
| 08/21/2013 to 04/02/2016 | $59,062 |
| 04/03/2016 to 04/15/2017 | $60,912 |
| 04/16/2017 to 08/12/2019 | $90,403 |
| 09/15/2019 to 01/04/2021 | $108,347 |

These pay figures for C, and the dates they changed, differ substantially from those in other documents (including market pay analyses) provided by the Agency. **As it turns out, C's pay loss is much less when the market pay figures and change dates provided by the Agency are used. Due to lack of SF-50s, the actual pay history of most of the five Agency-chosen comparators is unknown.**

iv. Agency failure to explain why certain comparators were chosen and not others

More confusion, with even more serious consequences, arises regarding comparators when one reviews the sparse documentation the Agency did provide:

- In the 08/12/2021 "BO Backpay Documentation" (see **Exhibit D**), the comparator used to compute the difference in market pay in "2019 and 2020" was Dean Sasaki (born in 02/1986 and thus more than 5 years C's junior). His market pay is stated to be $109,043, which is only $696 per year more than C's "2019 and 2020" market pay of $108,347. Yet that same document lists by name two other possible comparators (Kevin Jou and Sravan Kakani), both more than 5 years C's junior, who had much higher market pay ($125,379 and $123,043 respectively) for those years. **No explanation is given as to why those comparators, with their higher market pay rates, were not used to compute C's loss.** Similarly, for "2017 and 2018" the lesser-paid comparator's market pay was used to compute C's loss, with no explanation.

- In the 12/21/2021 "BO Backpay Recalculation Memo" (see **Exhibit F**, even less information is provided. **The names of the comparators are withheld, and no documentation to support the memo** (i.e., support similar to that provided to support the 08/12/2021 memo) **was provided**. The same market pay difference of $696 per year for "2019 and 2020" is cited, which is just as suspect as the same figure in the 08/12/2021 memo (**Exhibit D**), for the reasons cited above. The same market pay difference of $18,640 per year for "2017 and 2018" is cited, which is similarly suspect, again for the same reasons.

The comparators listed by Mr. Mondragon (see *Exhibit B*) and Mr. Bouza (see *Exhibit F*) are very different from each other, but the Agency has never explained why it chose one list over the other (see detailed discussion of this point in prior appeal brief). Their choice of the Bouza list resulted in a much lower pay loss amount.

C and her counsel obviously are not personnel specialists, and perhaps for that reason neither of us can understand how the Agency came to the final figure of $228,076.92 (stated in *Exhibits E, F* and *G*), or the amount paid ($219,906.14 in *Exhibit J*), nor how either figure could possibly be correct. C's counsel even went so far as providing alternative comparators that the Agency could have used, showing how use of these comparators seems justified, and asking why those comparators (which the Agency itself had used in the companion case of Dr. Shaner) were not being used here (see *Exhibit H*) – yet the Agency never even responded to those questions. The AJ ordered that C's market pay must be compared to "the **highest** comparative's market pay", yet it does not appear the Agency has done that. C's own pay loss calculations, using comparators different from those chosen by the Agency, also result in a much higher pay loss amount (see *Exhibit I*). **By simply refusing to engage on this issue, the Agency has left us in the dark about how their back pay calculation results could be correct**.

C.     THE AGENCY SHOULD BE ORDERED TO COMPUTE AND PAY BACK PAY TO C THE TOTAL AMOUNT, LESS WHAT HAS ALREADY BEEN PAID, THAT REFLECTS THE ACTUAL PAY LOSSES SHE SUFFERED, AND TO PROVIDE SUFFICIENT INFORMATION TO ALLOW C TO DETERMINE HOW THAT AMOUNT WAS COMPUTED INCLUDING WHY CERTAIN COMPARATIVES WERE OR WERE NOT CHOSEN.

Commission precedent makes clear that back pay, as the AJ stated in his Decision, is intended to make up for the difference in pay that a complainant actually suffers due to discrimination (see Decision, pages 12-13). This concept is meaningless unless it is based on calculations that reflect the actual pay loss suffered by such complainants.

C contends that the simplest and most straightforward way for the Agency to compute the back pay amount is, for each two-week pay period during the back pay period, to (1) identify the comparative with the highest market pay, (2) determine what that market pay was for that pay period, (3) determine what C's market pay was for that pay period, and (4) compute the difference. The sum total of all these differences is the amount the Agency owes C under the Decision. But whatever method is utilized, it should be understandable.

Difference in market pay between C and her highest-paid comparative is what the AJ awarded, and should have been clear enough. In any event, the Agency has never addressed the underlying problems described.

## CONCLUSION

C's established right to receive back pay in accordance with the AJ's Decision has been thwarted by the Agency for several years now. **The Agency has failed repeatedly to**

OFO/Petition No. 2025002227

**provide sufficient, understandable information as to how it has calculated her back pay, to include how it chose comparators for the calculation.**

She therefore requests that the Commission order the Agency AGAIN to fully comply with the AJ's Decision dated 01/04/2021, and to comply with the OFO order of 10/30/2023.

DATED:  January 10, 2025      Brown & Goodkin

By: Steven E. Brown, Attorneys for Complainant and Appellant/Petitioner Bonnie Olson

//

List of exhibits attached:

A    Back pay  calculation of $224,910.00 on 04/15/2021 and 04/19/2021 (two letters from John Mondragon, Lead HR Specialist)
B    Back pay calculation of $385,016.00 on 06/21-22/2021 (emails from John Mondragon, Lead HR Specialist, sent to C and later forwarded to Ms. Williams on 09/01/2021 – computing C's loss only through 2019, with promise to add 2020 and 2021 when "all comparators have their market pays reviewed")
C    Back pay calculation of $218,040.00 on 08/06/2021 (letter from Atourina Bouza, Health Systems Specialist
D    Back pay calculation of $218,040.00 on 08/12/2021 ("BO Backpay Documentation"; this figure was reiterated on 10/08/2021 in a memo from Joseph Dronchi, Acting Senior Strategic Business Partner, disparaging the 06/2021 emails from John Mondragon to C)
E    Back pay calculation of $228,076.92 on 12/28/2021 (email from Ms. Williams, with attached 12/21/2021 memo)
F    Memo from Atourina Bouza, Health Systems Specialist, dated 12/21/2021 (attached to 12/28/2021 email from Williams)
G    Email from Agency counsel to C's counsel dated 03/14/2024, with attachments
H    Email from C's counsel to Agency dated 06/12/2024 (calculation of about $394,000)
I    C's email to her counsel dated 09/21/2024 with back pay calculation of $532,564
J    C's Civilian Leave and Earnings Statement dated 04/29/2022 (showing retroactive "market pay" of $219,906.14).

OFO/Petition No. 2025002227

## PROOF OF SERVICE

I am a citizen of the United States and a resident or employee of Ventura County, California. I am employed by Brown & Goodkin. My business address is 910 Hampshire Road, Suite G, Westlake Village, California, 91361. I am over the age of 18 and not a party to the action.

On January 10, 2025, I served within the **APPELLANT'S BRIEF IN SUPPORT OF APPEAL/PETITION FOR ENFORCEMENT OF PRIOR OFO ORDER AND EXHIBITS** on the interested parties in said action, by the following method(s) as indicated to the right of each recipient below: (1) facsimile which complies with CRC Rule 2003(3); no error was reported by the fax machine, and the transmission report was properly issued by the transmitting machine; and/or (2) by email to the email addresses indicated below; and/or (3) by placing true copies thereof in sealed envelopes, with postage fully prepaid thereon, in a mail receptacle regularly maintained by the United States Postal Service, at Westlake Village, California addressed as follows:

U.S. Equal Employment Opportunity Commission       Via EEOC Portal only
Office of Federal Operations
PO Box 77960
Washington, DC 20013

Dept of Veterans Affairs – VA General Counsel       Via EEOC Portal only
VA Office of Chief Counsel

Bonnie Olson                                        Via EEOC Portal and email
Appellant

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 10, 2025, at Westlake Village, California.

_____
Erika E. Bauer, Paralegal

39

OFO/Petition No. 2025002227

# Exhibit A

**Appellant's Brief in Support of Appeal/Petition for Enforcement of Prior OFO Order 01/10/25**

OFO/Petition No. 2025002227



**DEPARTMENT OF VETERANS AFFAIRS**
**Greater Los Angeles Healthcare System**
**11301 Wilshire Boulevard**
**Los Angeles, CA  90073**

In Reply Refer To: **691/00**

April 15, 2021

To Whom it may concern:

In compliance to the Final Judgement issued for Bonnie Olson, calculations were made which included back pay for the difference between her pay and that of her highest paid comparatives retroactive to August 21, 2013 (two years prior to filing the complaint). Comparatives include any substantially younger psychiatrist (five years younger or more) employed the West Los Angeles VA Medical Center, who was paid a higher market pay salary than Complainant from August 21, 2013 to Present.  The difference was calculated from her pay received for each applicable year as well as her substantially younger psychiatrist (five years younger or more) colleague identified who received a higher rate of pay. Calculations as well as identified rates of pay for all colleagues within the identified group were provided and calculated at a total of $224,910.00. If you have any questions please contact me at 786-760-7350.

Sincerely,

John Mondragon.
Lead HR Specialist

West Los Angeles Healthcare Center
11301 Wilshire Blvd
Los Angeles, CA  90073
(310) 478-3711

Bakersfield Community-Based
Outpatient Clinic
1801 Westwind Drive
Bakersfield, CA  93301
(661) 632-1800

Los Angeles Ambulatory
Care Center
351 East Temple Street
Los Angeles, CA  90012
(213) 253-2677

San Luis Obispo Community-Based
Outpatient Clinic
1288 Morro Street, Suite 200
San Luis Obispo, CA  93401
(805) 543-1233

Santa Barbara Community-Based
Outpatient Clinic
4440 Calle Real
Santa Barbara, CA  93110
(805) 683-1491

Santa Maria Community-Based
Outpatient Clinic
1550 East Main Street
Santa Maria, CA 93454
(805) 354-6000

Oxnard Community-Based
Outpatient Clinic
1690 Universe Circle
Oxnard, CA  93033
(805) 204-9135

Lancaster Community-Based
Outpatient Clinic
340 East Avenue I
Lancaster, CA  93535
(661) 729-8655

East Los Angeles Community-Based
Outpatient Clinic
5426 East Olympic Blvd  Suite 150
Commerce, CA  90040
(323) 725-7557

Sepulveda Ambulatory Care Center
16111 Plummer Street
North Hills, CA  91343
(818) 891-7711

San Gabriel Valley Community-Based
Outpatient Clinic
7 West Foothill Blvd
Arcadia, CA  91006
(626) 500-6881



OFO/Petition No. 2025002227



**DEPARTMENT OF VETERANS AFFAIRS**
**Greater Los Angeles Healthcare System**
**11301 Wilshire Boulevard**
**Los Angeles, CA  90073**

In Reply Refer To: 691/00

April 19, 2021

To Whom it may concern:

In compliance to the Final Judgment issued for Bonnie Olson, calculations were made which included back pay for the difference between her pay and that of her highest paid comparatives retroactive to August 21, 2013 (two years prior to filing the complaint). Comparatives include any substantially younger psychiatrist (five years younger or more) employed the West Los Angeles VA Medical Center, who was paid a higher market pay salary than Complainant from August 21, 2013 to Present. The difference was calculated from her pay received for each applicable year as well as her substantially younger psychiatrist (five years younger or more) colleague identified who received a higher rate of pay. Calculations as well as identified rates of pay for all colleagues within the identified group were provided and calculated at a total of $224,910.00. Calculations were as follows:

2013 Market Pay – Employee A (DOB 11/1975)   $98,213
                        Ms. Olson - $59,062
                                   $39,151

2014 – 2015 Market Pay – Employee B (DOB 8/1966) $131,033
                        Ms. Olson -  $60,912
                                   $70,121

2016 – 2017 Market Pay – Employee C (DOB 4/1970) $143,033
                        Ms. Olson -  $90,403
                                   $52,630

2018 – 2019 Market Pay – Employee D (DOB 8/1970)  $171,355
                        Ms. Olson - $108,347
                                   $63,008

The total calculation was a sum of **$224,910**

If you have any questions, please contact me at 786-760-7350.

Sincerely,

John Mondragon
Lead HR Specialist

West Los Angeles Healthcare Center
11301 Wilshire Blvd.
Los Angeles, CA  90073
(310) 478-3711

Bakersfield Community-Based
Outpatient Clinic
1801 Westwind Drive
Bakersfield, CA  93301
(661) 632-1800

Los Angeles Ambulatory
Care Center
351 East Temple Street
Los Angeles, CA  90012
(213) 253-2677

San Luis Obispo Community-Based
Outpatient Clinic
1288 Morro Street, Suite 200
San Luis Obispo, CA  93401
(805) 543-1233

Santa Barbara Community-Based
Outpatient Clinic
4440 Calle Real
Santa Barbara, CA  93110
(805) 683-1491

Santa Maria Community-Based
Outpatient Clinic
1550 East Main Street
Santa Maria, CA 93454
(805) 354-6000

Oxnard Community-Based
Outpatient Clinic
1690 Universe Circle
Oxnard, CA  93033
(805) 204-9135

Lancaster Community-Based
Outpatient Clinic
340 East Avenue I
Lancaster, CA  93535
(661) 729-8655

East Los Angeles Community-Based
Outpatient Clinic
5426 East Olympic Blvd., Suite 150
Commerce, CA  90040
(323) 725-7557

Sepulveda Ambulatory Care Center
16111 Plummer Street
North Hills, CA  91343
(818) 891-7711

San Gabriel Valley Community-Based
Outpatient Clinic
7 West Foothill Blvd.
Arcadia, CA  91006
(626) 500-6881



OFO/Petition No. 2025002227

# Exhibit B

**Appellant's Brief in Support of Appeal/Petition for Enforcement of Prior OFO Order**
**01/10/25**

OFO/Petition No. 2025002227

| From: | Steven Brown |
|---|---|
| To: | "Williams, Veronika J."; "Olson, Bonnie L"; "Bonnie Olson" |
| Cc: | Erika Bauer; "Rodriguez-Colon, Jacqueline (VISN22)"; "Bouza, Atourina"; "Gray, Andre L. CAVHCS"; "Mondragon, John H. (Miami VA)"; Daniel Goodkin |
| Subject: | RE: [EXTERNAL] Olson back pay, EEOC Nos. 480-2021-00054X, 480-2021-00055X |
| Date: | Wednesday, September 1, 2021 1:54:03 PM |

Ms. Williams:

I have a number of queries about your email, which include but are not limited to:

Please explain why you "cannot speak to the methods employed by Mr. Mondragon", who is an employee of the VA and the person tasked with communicating to our client on this issue on behalf of the VA.

Please explain why you think the figures given by Mr. Mondragon on 06/22/2021 are an "estimate" when he does not label them as such.

Please explain why you think the figures given by Mr. Mondragon on 06/22/2021 are "not based on all relevant market pay reviews".

Steven E. Brown
Brown & Goodkin
910 Hapshire Road, Suite G
Westlake Village, CA 91361-2888
Voice: 805-496-9777
Fax: 805-496-6368
sbrownesq@federal-law.com
website: www.federal-law.com


**From:** Williams, Veronika J. <Veronika.Williams@va.gov>
**Sent:** Wednesday, September 1, 2021 1:15 PM
**To:** sbrownesq@federal-law.com; Olson, Bonnie L <Bonnie.Olson@va.gov>; 'Bonnie Olson' <dr.o@earthlink.net>
**Cc:** 'Erika Bauer' <erika@federal-law.com>; Rodriguez-Colon, Jacqueline (VISN22) <Jacqueline.Rodriguez-Colon@va.gov>; Bouza, Atourina <Atourina.Bouza@va.gov>; Gray, Andre L. CAVHCS <Andre.Gray@va.gov>; Mondragon, John H. (Miami VA) <John.Mondragon@va.gov>
**Subject:** RE: [EXTERNAL] Olson back pay, EEOC Nos. 480-2021-00054X, 480-2021-00055X

Mr. Brown,

While I cannot speak to the methods employed by Mr. Mondragon to calculate the below pay determination estimate in June, it is clear that this number was: 1) an estimate; 2) not based on all relevant market pay reviews. Atourina Bouza is the Agency's subject matter expert and was relied



upon to assist in the matter after two inaccurate pay determinations were previously issued by HR. I
can attest that the determination was made after an individual assessment of each relevant market
pay review completed as of August 6, 2021.

Nonetheless, I will look into the matter and get back you all before 9/10. In the interim, please
assume the market pay determination issued on 8/12 as the Agency's position on the relief due to
Ms. Olson under the January Order.

**Veronika J. Williams**
Staff Attorney
U.S. Department of Veterans Affairs
Office of General Counsel
Pacific District, Southern California
11301 Wilshire Blvd., Building 506
Los Angeles, CA 90073-1003
(310) 268-3800 (main)
(310)268-4596 (fax)
Veronika.williams@va.gov

**Confidentiality Note:** This email is intended only for the person or entity to which it is
addressed and may contain information that is privileged, confidential, or otherwise
protected from disclosure. Dissemination, distribution, or copying of this email or the
information herein by anyone other than the intended recipient is prohibited. If you have
received this email in error, please notify the sender by email, phone or fax and destroy the
original message and all copies. Thank you.

**From:** sbrownesq@federal-law.com <sbrownesq@federal-law.com>
**Sent:** Wednesday, September 1, 2021 12:06 PM
**To:** Williams, Veronika J. <Veronika.Williams@va.gov>; Olson, Bonnie L <Bonnie.Olson@va.gov>;
'Bonnie Olson' <dr.o@earthlink.net>
**Cc:** 'Erika Bauer' <erika@federal-law.com>; Rodriguez-Colon, Jacqueline (VISN22)
<Jacqueline.Rodriguez-Colon@va.gov>
**Subject:** RE: [EXTERNAL] Olson back pay, EEOC Nos. 480-2021-00054X, 480-2021-00055X

Ms. Williams –

Please review the email string below. You will see that the VA's own calculations as provided to our
client directly are very different from (i.e., much higher than) those you have recently been providing
to us.

   **From:** Mondragon, John H. (VISN 22) <John.Mondragon@va.gov>

45

OFO/Petition No. 2025002227

**Sent:** Tuesday, June 22, 2021 7:21 AM
**To:** Olson, Bonnie L <Bonnie.Olson@va.gov>
**Cc:** Gray, Andre L. <Andre.Gray@va.gov>
**Subject:** RE: EEO judgement and order

Ok, I see what you mean now. Please see the below revised calculations:

2013 (Prorated for 9 applicable pay periods)  = $13,552.00
2014 = $70,121
2015 = $70, 121
2016 = $52,603
2017 = $52,603
2018 = $63,008
2019 = $63,008

Which totals to $385,016. As previously stated, the 2020 and 2021 I will not be able to
provide until all comparators have their Market pays reviewed.

Thanks


**From:** Olson, Bonnie L <Bonnie.Olson@va.gov>
**Sent:** Monday, June 21, 2021 12:58 PM
**To:** Mondragon, John H. (VISN 22) <John.Mondragon@va.gov>
**Subject:** RE: EEO judgement and order

Hi Mr. Mondragon,

Thanks for getting back. The point is though, we are not paid our market pay only the year
we are reviewed, we are paid that market pay the year in between the next pay review as
well. This point seems to be missed somehow. Could you help me by showing me what you
think the back pay is for EACH year? I have filled in the figures you have already determined.

Partial year 8-2013 to Jan 2014-→ 39,151
2014-2015-----------→ $70121
2015-2016-------------→$
2016-2017-----------→ $52,630
2017-2018----------→$
2018-2019----------→ $63,008
2019-2020--------→$
2020-2021--------→$

Maybe your could explain the reasoning behind leaving out the 3 full years prior to the year
where you say you do not yet have the data.



OFO/Petition No. 2025002227

Thanks.
Dr. Olson

**From:** Mondragon, John H. (VISN 22) <John.Mondragon@va.gov>
**Sent:** Monday, June 21, 2021 7:05 AM
**To:** Olson, Bonnie L <Bonnie.Olson@va.gov>
**Cc:** Gray, Andre L. <Andre.Gray@va.gov>; 'dr.o@earthlink.net' <dr.o@earthlink.net>
**Subject:** RE: EEO judgement and order

Hi Dr. Olson,
Based on the criteria set forth on the judgement it stated the comparators were to be at
least 5 years younger. Going back from August 2013 I reviewed all those individuals that
meet that criteria to present. In the calculations are the you met that, depending on when
the individuals started determines when they are due a market pay review. Per VA policy,
Physicians are reviewed bi-annually to determine if they are to receive an increase, decrease
or stay at the same Market Pay. In the calculations you will see that its broken down into two
year increments to account for both years an employee would have been due (i.e. If you
received a review in 2013, you wont be due until 2015. If you received a review on 2014 you
wont be due until 2016). I am still awaiting for the figures from 2019 – January 2021. Once
received I will be able to give you the final estimate.

**From:** Olson, Bonnie L <Bonnie.Olson@va.gov>
**Sent:** Monday, June 14, 2021 5:44 PM
**To:** Mondragon, John H. (VISN 22) <John.Mondragon@va.gov>
**Cc:** Gray, Andre L. <Andre.Gray@va.gov>; 'dr.o@earthlink.net' <dr.o@earthlink.net>
**Subject:** RE: EEO judgement and order

Hi,
I am just returned from my leave and read this.

The following was sent to me and DOES NOT account for all years from Aug 20-13 to the
beginning of 2020. 2015 to 2016 is missing and 2017 to 2018 are missing. Please explain,
after all I do get a pay check each year.

Thanks

*************************** below please see the figures sent to me email 5-3-21
***************************
2013 Market Pay – Employee A (DOB 11/1975) $98,213
Ms. Olson - $59,062
$39,151
2014 – 2015 Market Pay – Employee B (DOB 8/1966)
$131,033
Ms. Olson - $60,912
$70,121
2016 – 2017 Market Pay – Employee C (DOB 4/1970)
$143,033
Ms. Olson - $90,403

OFO/Petition No. 2025002227

$52,630
2018 – 2019 Market Pay – Employee D (DOB 8/1970)
$171,355
Ms. Olson - $108,347
$63,008
The total calculation was a sum of **$224,910**

Please let me know where this takes us.

Thank you,

Dr. Bonnie Olson
310-478-3711 x 40402 at GLA

**From:** Mondragon, John H. (VISN 22) <John.Mondragon@va.gov>
**Sent:** Tuesday, June 01, 2021 7:11 AM
**To:** Olson, Bonnie L <Bonnie.Olson@va.gov>
**Cc:** Gray, Andre L. <Andre.Gray@va.gov>; 'dr.o@earthlink.net' <dr.o@earthlink.net>
**Subject:** RE: EEO judgement and order

Good Morning,
The calculation provided does cover the time period mentioned in your settlement from Mid August 2013 – 2019. In the calculation the identified highest comparator was identified as well. As previously discussed, the current issue is the pay from 2020 – Jan 2021 since the data is not current for all the comparators and for you as well. This has been identified to the parties who would be bale to rectify that portion of the pay. Without that data I am not able to give you true and fair estimate. Once that issue has been rectified then I will gladly provide you the up to date data and monetary amounts.

Thanks for your patience

**From:** Olson, Bonnie L <Bonnie.Olson@va.gov>
**Sent:** Thursday, May 27, 2021 4:28 PM
**To:** Mondragon, John H. (VISN 22) <John.Mondragon@va.gov>
**Cc:** Gray, Andre L. <Andre.Gray@va.gov>; 'dr.o@earthlink.net' <dr.o@earthlink.net>
**Subject:** EEO judgement and order

Dear Mr. Mondragon,

I think our last e-mail communication was the first week of May. I will be on leave next week beginning 6-1-21 and returning 6-14-21. The back pay award on this judgement was due over 2 months ago. It may be a tricky calculation, but the back pay must be for each year from mid- August 2013 to Jan 2021. So that's a 7 year and 4+ months of missed pay. The comparator with highest market pay and 5 years younger than me needs to be identified.

Since I did not get a response to the calculation I thought came forward from your own



previous comparators, I don't have an idea of where the back pay status sits now.

During my leave I can be reached at 310-383-5519 or at dr.o@earthlink.net. I hope to be available for any questions or to receive any further information you may have.

Thank you,

Dr. Bonnie Olson

The figures on the attachments you have recently sent us are both insufficiently-detailed and unacceptable. It appears that your office has not been communicating and/or coordinating with the VA employee(s) charged with calculating these back pay benefits.

We have been working with your office and the VA for quite some time now trying to resolve this issue, but our patience is wearing thin. Our client advises us that she has been "vendorized" at the VA for months, so that process need not be repeated.

Please revise the forms to make the figures correct and resubmit as soon as possible.

Steven E. Brown
Brown & Goodkin
910 Hapshire Road, Suite G
Westlake Village, CA 91361-2888
Voice:  805-496-9777
Fax: 805-496-6368
sbrownesq@federal-law.com
website: www.federal-law.com


**From:** Williams, Veronika J. <Veronika.Williams@va.gov>
**Sent:** Tuesday, August 31, 2021 9:56 AM
**To:** Olson, Bonnie L <Bonnie.Olson@va.gov>; 'Bonnie Olson' <dr.o@earthlink.net>; sbrownesq@federal-law.com
**Cc:** 'Erika Bauer' <erika@federal-law.com>; Rodriguez-Colon, Jacqueline (VISN22) <Jacqueline.Rodriguez-Colon@va.gov>
**Subject:** RE: [EXTERNAL] Olson back pay, EEOC Nos. 480-2021-00054X, 480-2021-00055X

Good morning Ms. Olson,

The Agency cannot process your payment until you complete the VA-10091; Employee Statement; and TSP-1. Please complete these forms ASAP, so that you may receive your payment without further delay.



OFO/Petition No. 2025002227

Thanks!

**Veronika J. Williams**
Staff Attorney
U.S. Department of Veterans Affairs
Office of General Counsel
Pacific District, Southern California
11301 Wilshire Blvd., Building 506
Los Angeles, CA 90073-1003
(310) 268-3800 (main)
(310)268-4596 (fax)
Veronika.williams@va.gov

**Confidentiality Note**: This email is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this email or the information herein by anyone other than the intended recipient is prohibited. If you have received this email in error, please notify the sender by email, phone or fax and destroy the original message and all copies. Thank you.

**From:** Williams, Veronika J.
**Sent:** Thursday, August 12, 2021 2:07 PM
**To:** sbrownesq@federal-law.com
**Cc:** 'Erika Bauer' <erika@federal-law.com>; 'Bonnie Olson' <dr.o@earthlink.net>; Snortland, Steven R. (OGC) <Steven.Snortland@va.gov>; Bouza, Atourina <Atourina.Bouza@va.gov>; Rodriguez-Colon, Jacqueline (VISN22) <Jacqueline.Rodriguez-Colon@va.gov>
**Subject:** RE: [EXTERNAL] Olson back pay, EEOC Nos. 480-2021-00054X, 480-2021-00055X

Good afternoon,

Attached, please find: the back pay determination memo and supporting evidence; form TSP-1; VA Form 10091 (GLA); and, a DAS employee statement. Ms. Olson: please complete the attached forms and return them to me directly. Once these completed forms are received, the Agency will begin processing your lump sum payment, consistent with the attached determination.

If you have any questions, comments, or concerns, please reach out to me.

Thank you!

**Veronika J. Williams**
Staff Attorney
U.S. Department of Veterans Affairs
Office of General Counsel
Pacific District, Southern California

